J. R. CHALOUPKA, Administrator, Appellee, v. THOMAS MAR-
TIN, Appellant.

JUDGMENT:    Action on Judgment—Foreign Dormant Judgments.
1    A foreign judgment, dormant and nonrevivable, but not barred
by the statute of limitation of such foreign state, will support
an action in this state at any time within 20 years from its
date.

JUDGMENT:    Action on Judgment—Defense—Fraud—Evidence—
2    Sufficiency.  Evidence reviewed, in an action on a judgment,
and held insufficient to show that defendant was fraudulently
induced not to make defense to the original action.

JUDGMENT:    Opening or Vacating—Justifiable Judgment Procured
3    by Fraud.  Principle recognized that, in the absence of any
showing of defense to a judgment, the same should not be
disturbed, even under a plea of fraud in procuring it.

COSTS:    Security for Payment—Substitution of Resident Plaintiff.
4    The good-faith substitution of a resident plaintiff in lieu of a
nonresident one, subsequent to the filing of a motion for cost
bond, but before ruling thereon, justifies the overruling of said
motion.    So held where an administrator was so substituted.
Sec. 3847, Code, 1897.

*Appeal from Pottawattamie District Court.*—THOMAS AR-
THUR, Judge.

MONDAY, MAY 14, 1917.

ACTION on a foreign judgment resulted in the entry of
judgment as prayed.  The defendant appeals.—*Affirmed.*

*Charles Roe* and *Frank Shinn,* for appellant.

*Preston & Dillinger,* for appellee.

LADD, J.—Judgment was entered July 2,
1895, in the county court of Douglas Coun-
ty, Nebraska, for Perry Bros. & Co. against
Thomas Martin for the sum of $750.99
and $7.45 costs, to bear interest at the

1. JUDGMENT: ac-
tion on judg-
ment: foreign
dormant judg-
ments.

rate of 7 per cent per annum. Abraham Slimmer was defendant, but was not found in the county. This action was brought by W. J. Perry, June 28, 1913, and later he assigned the cause of action to Ira R. Stitt, upon whose death the administrator of his estate was substituted as plaintiff. After a demurrer had been overruled, the defendant interposed several defenses, some of which had been raised by the demurrer in his answer. These will be disposed of as we proceed.

I. The defendant pleaded that he was fraudulently induced by W. J. Perry not to appear or to defend in the action brought against him in Nebraska, though having a good defense, and on this ground the judgment there entered was invalid. See *Rogers v. Gwinn*, 21 Iowa 58. It appears that defendant has continuously resided in Pottawattamie County, Iowa, since long prior to the beginning of that action; that he, in company with one Slimmer, under the firm name of Slimmer & Martin, shipped cattle to Omaha for sale, and brought stock cattle there and sold to feeders in the country. This was done during the years from 1890 to 1895. The firm bought and sold through the commission house of Perry Bros. & Co., in part at least, and the suit appears to have been on a balance of account. The summons was served on defendant April 25, 1895, and required his appearance in court May 6th following. Martin testified:

That, shortly after service of notice, he met W. J. Perry, of the firm in Omaha; that he did not claim that he (Martin) owed "him any money."

"And then, Mr. Perry said he would fix this, and he went down in his buggy and drove down to the court house and went in to a lawyer and told him to do no more with this, and I never knew anything more about it, never knew there was such a thing against me in Nebraska."

2. JUDGMENT: action on judgment; defense: fraud: evidence: sufficiency.

The witness explained that the man to whom Perry spoke was in a small room at the court house at a table, and Perry told him to do nothing more with the Slimmer & Martin case; and that he "relied upon it, because I never knew a thing about it after that and never supposed there was anything done." The witness also testified that he continued shipping cattle to and from Omaha individually or as a member of partnerships from 1895 until 1913, and was in that city every two or three weeks. On the other hand, Perry testified that the suit was on balance owing on overdrafts; that Perry Bros. & Co.'s books are lost; that one Gribble kept them; that he had repeatedly called defendant's attention to the account, but he made no offer to pay; that he had never talked with him since the summons was served; that he had made effort to collect the judgment through his attorney and a collection agency in the first six years, and then let the matter drop; that he saw Martin several times, and knew he was shipping to another commission agency, but that he was sure he did not ship in his own name for six years after the entry of the judgment. Gribble testified to having been bookkeeper for Perry Bros. & Co. from 1892 until after judgment was entered; that he made out the statement from the books, on which judgment was entered, and verified them in court, and swore to the accuracy of the account. It will be noted that defendant did not deny his indebtedness, and the testimony of Gribble is undisputed.

As there was no showing of any defense, the enforcement of the judgment ought

3. JUDGMENT: opening or vacating: justifiable judgment procured by fraud.

not to be enjoined. *Taggart v. Wood*, 20 Iowa 236. It is presumed to be valid, and the only circumstances tending to corroborate the testimony of plaintiff are the delay from May to July before taking judgment, and the delay in enforcing it. The latter is explained by the witness Perry, and postpone-

ment in taking judgment is not of controlling significance, and might have been explained but for the death of complainant's attorney. Moreover, Martin's story is unreasonable; for he does not pretend that Perry suggested that the cause had been instituted by mistake or that he had subsequently learned that nothing was due, and, but for something of the kind, he would not be likely to discontinue a cause he had just begun. We are content with the finding of the trial court upholding the validity of the judgment.

II. Under the laws of Nebraska, a judgment becomes dormant when five years have elapsed after the last execution issued thereon, or if none have issued, then from its entry. Sec. 8056, Rev. St. Neb., 1913. A dormant judgment may be revived, but action for that purpose must have been commenced within ten years after it became dormant. Sec. 8041, Rev. St. Neb., 1913.

Execution issued March 20, 1896, so that this judgment became dormant in 1901, and the period for bringing suit to revive expired March 20, 1911. But a dormant judgment is not necessarily dead. It only sleepeth. It may be revived, and in Nebraska this may be done only in the forum where the judgment was entered. *Bank of Miller v. Moore,* (Neb.) 154 N. W. 731. Suit may be maintained on a dormant judgment. *David v. Porter,* 51 Iowa 254; *Mahoney v. State Ins. Co.,* 133 Iowa 570. The application for revivor under the Nebraska statute is not the beginning of a new action, but is auxiliary to the old, with the object of obtaining leave of the court to enforce the judgment. *Bankers' Life Ins. Co. v. Robbins,* (Neb.) 80 N. W. 484. The right to apply for revivor of a judgment and that to maintain an action thereon are cumulative remedies. The judgment plaintiff may have either or both. *Snell v. Rue,* 72 Neb. 571 (117 Am. St. 813).; Freeman on Judgments (3d Ed.) 462; 23 Cyc. 1436.

As the remedies are independent, the circumstance that

the remedy by revivor was not available after the lapse of ten years from the issuance of execution did not interfere with the maintenance of an action on the judgment. The defendant pleaded, however, that such an action was barred by the statute of limitations. The Supreme Court of Nebraska at first entertained the view expressed in *David v. Porter,* 51 Iowa 254, that there was no limit within which suit must be brought on a judgment in that state (*Snell v. Rue,* supra), but later overruled that decision, and held, in *Armstrong v. Patterson,* (Neb.) 152 N. W. 311, that an action on a domestic judgment is barred in five years after its entry. This was on rehearing of a cause previously decided the other way (149 N. W. 408), and evidently was made in despair of the legislature of that state's ever clarifying the statute on the subject. Conceding the correctness of the last decision and the construction there put on the statute, it does not follow that this action was barred by the statute of limitations. Section 7577 of the Revised Statutes of Nebraska, 1913, provides:

"If, when a cause of action accrues against a person, he be out of the state, or shall have absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he come into the state, or while he is absconded or concealed; and if, after the cause of action accrues, he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought."

As defendant never resided in Nebraska, the five-year statute of limitations never began to run. *Hartley v. Crawford,* (Neb.) 11 N. W. 729; *Edgerton v. Wachter,* (Neb.) 4 N. W. 389. Nor does Section 3452, Code, 1897, bearing on the same subject, have any application. *Sloan v. Waugh,* 18 Iowa 224; *Petchell v. Hopkins,* 19 Iowa 531; *Knight v. Moline, E. M. & W. R. Co.,* 160 Iowa 160.

Section 3447, Code, 1897, provides that actions may be maintained on a judgment of a court of record, whether of this or any other of the United States, within twenty years.

That the Supreme Court of Nebraska may have held a judgment to be specialty does not render it other than a judgment, and there is no ground for the suggestion that the period of limitations is that defined for suits on written contracts. As less than twenty years had elapsed after the entry of judgment, the court rightly held the plea of the statute of limitations not good.

III. Before answering, defendant moved

**4. Costs: security for payment: substitution of resident plaintiff.** that plaintiff file a cost bond. Before this motion was submitted, Ira R. Stitt moved that he be substituted as party plaintiff, for that the cause of action had been assigned by the original plaintiff to him. Defendant filed a written resistance. Later, Stitt died, and Chaloupka, as administrator of his estate, asked that he be substituted as plaintiff. Thereupon the last motion was sustained, and the motion for cost bond overruled. The reason for asking for a cost bond no longer existed, and there was no error in denying the motion therefor. See Sec. 3847, Code, 1897.—*Affirmed.*

Gaynor, C. J., Evans and Salinger, JJ., concur.